285 P.2d 802

**STATE of Idaho, Plaintiff-Respondent,**
v.
**Donald Lee FEDDER, Defendant-Appellant.**

No. 8117.

Supreme Court of Idaho.
June 29, 1955.

Black, Black & Oliver, Pocatello, for appellant.

Graydon W. Smith, Atty. Gen., J. R. Smead, Asst. Atty. Gen., Harold S. Forbush, Pros. Atty., Driggs, John M. Sharp, Sp. Asst. Prosecutor, Idaho Falls, for respondent.

**PORTER, Justice.**

Appellant was charged with burglarizing the Tetonia Club in the Village of Tetonia. He was tried and convicted of burglary in the first degree. His motion for new trial was denied. He has appealed to this court from the judgment of conviction and from the order denying his motion for new trial.

Mr. and Mrs. William C. Berry live in the Village of Tetonia, a short distance from the Tetonia Club. At about 4:30 a. m. on Monday morning, December 29, 1952, Mrs. Berry saw a station wagon park across the street from the Tetonia Club. The car was being driven without lights. Two men got out of the car and entered the Tetonia Club. Mrs. Berry called her husband and they watched the two men carry several slot machines out of the club and place them in the station wagon. The station wagon was then driven away toward Driggs and went some distance before its lights were turned on. Mr. Berry called the Sheriff of Teton County at Driggs and informed him of what had taken place. Mr. Berry also called other law enforcement officers.

The Sheriff of Teton County and the Marshal of Driggs set up a road block on the outskirts of Driggs. The station wagon was driven through the road block without stopping. The Marshal fired a shot into the tire on the front wheel of the station wagon. The station wagon careened down the road for some distance and went into the borrow-pit. When the Sheriff and the Marshal approached the car one of its occupants had disappeared and appellant was pinned in the front seat. He was arrested and lodged in jail. The Sheriff took possession of the slot machines.

The Tetonia Club and the slot machines belonged to a Mr. Joe Williams.

At his trial, appellant was the sole witness for the defense. He testified in gen-

eral that he left Boise on the morning of December 27, 1952, with his partner, Floyd Johnson, with the purpose of purchasing slot machines in eastern Idaho. That they proceeded to Idaho Falls where appellant left Johnson. That appellant borrowed an automobile from a friend and drove to Rigby, Rexburg and other towns, seeking slot machines. That in the evening he entered the Tetonia Club in the Village of Tetonia. That he purchased a number of slot machines from the bartender in the club, who was a young man of 21 or 22 years of age. That he loaded one of such slot machines in his car and arranged with the bartender to get the other slot machines Sunday evening, and thereupon returned to Idaho Falls.

That on Sunday he took the one slot machine to Burley, a distance of 130 miles to have some work done on the machine; that he missed his man in Burley and returned to Idaho Falls. That he then went to Tetonia and to the Tetonia Club about 11:00 or 12:00 o'clock p. m. That the bartender was entertaining friends in the club and told appellant to return for the slot machines around 2:30 a. m. That appellant then drove back to Idaho Falls, a distance of some 80 miles, and picked up his partner, Floyd Johnson. That it was snowing, the wind was blowing and the roads were icy and slick. That appellant and Johnson returned to the Tetonia Club about 4:30 in the morning and loaded up the slot machines. That the barkeeper was not there but had left the front door unlocked so that appellant could enter the club. That appellant and Johnson started for Driggs to stay all night but their car was stopped at the outskirts of Driggs by the Sheriff of Teton County and the Marshal of Driggs and appellant placed under arrest.

Appellant has made twenty-three assignments of error. For convenience, we will consider and dispose of same in the order they are discussed in appellant's brief. Appellant's Assignment of Error No. I challenges the sufficiency of the evidence. Assignment of Error No. X, directed at the court's refusal to grant a new trial, and Assignment of Error No. XXIII, urging the court erred in refusing to grant defendant's motion in arrest of judgment, both raise the question of the sufficiency of the evidence. An examination of the evidence discloses that it is amply sufficient to sustain the judgment of conviction although the evidence of the state is contradicted in part by the testimony of appellant. There being sufficient evidence to sustain the verdict, a mere conflict of evidence is of no avail on appeal. State v. Kleier, 69 Idaho 278, 206 P.2d 513; State v. Eikelberger, 71 Idaho 282, 230 P.2d 696; State v. Hewitt, 73 Idaho 452, 254 P.2d 677.

The only real conflict in the evidence was on the question of the intent with which appellant entered the Tetonia Club. Such question was solely for the

jury's determination from a consideration of all the facts and circumstances shown by the evidence. State v. Bull, 47 Idaho 336, 276 P. 528; State v. Dwyer, 33 Idaho 224, 191 P. 203; State v. Hewitt, supra.

By Assignments of Error No. II and No. VII, it is urged the court erred in its refusal to sustain objections of defendant to the state's offer of evidence tending to connect defendant with the alleged offense prior to any proof of the corpus delicti. The trial court's permission to the state to offer proof of appellant's actions prior to proof by the owner of the property that the entry into the building was unauthorized and that the slot machines had been stolen was a matter within the discretion of the trial court. No abuse of such discretion is shown. State v. Vanek, 59 Idaho 514, 84 P.2d 567; State v. Hewitt, supra.

Assignment No. III asserts the court erred in denying defendant's motion for mistrial. The Sheriff of Teton County, as a witness, identified a small wrecking bar, which he had taken out of the tool kit that was in the station wagon, as the tool which made certain marks on the door of the Tetonia Club. Later, the Sheriff was recalled and testified that he was in error in stating that the bar, Exhibit "G", was the one used to force entry into the Tetonia Club, although it was among the articles in the box of tools taken from the station wagon. Appellant then moved for a mistrial on the ground of the highly prejudicial nature of State's Exhibit "G". Counsel for the state then stated: "I think not, if your Honor please. Actually, the witness stated yesterday that it was taken from the car,—a box of tools, and in going out to get the proposed Exhibit 'G' apparently one of the instruments was taken from a large box of tools,—I mean they brought in one tool, and the witness now contends that the wrong tool was introduced. It is just another tool in the same group that was taken from the car." Appellant then moved for a mistrial on the further ground that the matters stated by counsel for the state were not in evidence.

The court denied both motions for mistrial and instructed the jury "that the statements of counsel in their argument is not evidence. The evidence comes to you from the witness stand." On motion of appellant, Exhibit "G" and all reference thereto was stricken from the record, and the jury instructed to disregard the same entirely in their consideration of the case. Thereafter, the wrecking bar, Exhibit "H", was identified and admitted. We find no error in the action of the trial court; or of the prosecuting attorney. See generally, State v. Spencer, 74 Idaho 173, 258 P.2d 1147.

By Assignment of Error No. V, appellant complains of the court's action in allowing the state to endorse names upon the information and refusing defendant's motion for continuance after having allowed such endorsement; and by Assignment of Error No. VI, urges that the court

erred in permitting the witness, Joe Williams, to testify when his name was not endorsed to the information. On August 31, 1953, the state filed a motion for leave to endorse upon the information the names of Joe Williams and Ralph Heileson as witnesses for the state. Notice of this motion was served on August 27 and appellant, on August 28, moved for a continuance of the trial of such cause which had been set for trial on August 31. The court granted the motion to endorse the names of the witnesses on the information and set the cause for trial on September 3. Thereafter, trial of defendant was held beginning October 20, 1953. Names are endorsed on the information in order to give the defendant an opportunity before the trial to interview such witnesses and to prepare to meet their testimony. State v. Stewart, 46 Idaho 646, 270 P. 140; State v. Mundell, 66 Idaho 297, 158 P.2d 818; Section 19–1302, I.C. Appellant had ample time, more than 50 days, to prepare to meet the testimony of the additional witnesses.

The name of the witness, Joe Williams, was not actually endorsed upon the information after the court granted leave for such endorsement. Appellant suffered no prejudice because such witness was permitted to testify without the ministerial act of endorsement on the information having been performed.

At the time fixed for trial on September 3, appellant was not present, but a motion was filed by his attorneys for a continuance on the ground that appellant was unable to be present for trial as he was in the State of California suffering from injuries received in an automobile accident. By Assignment of Error No. IX, appellant urges that the court erred in refusing to grant such continuance. Appellant was present and participated in the trial beginning October 20. It does not appear that the court's refusal to grant a continuance prevented appellant from procuring any witnesses or other evidence, or that he was prejudiced in any way in the presentation of his cause by a denial of the continuance.

The trial court forfeited appellant's bond for his failure to appear for trial on September 3, as provided by Section 19–2927, I.C. Thereafter, appellant moved to have the court's order forfeiting the bail bond be set aside and discharged. The court ordered the forfeiture set aside upon condition that the appellant pay into court the sum of $480 to pay the costs of the jury called at the time appellant did not appear for trial. Assignment of Error No. VIII challenges the court's order.

The forfeiture proceedings were had under Sections 19–2927 and 19–2928, I.C. Section 19–2927, I.C., reads as follows:

"If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his presence in court may be lawfully re-

quired, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes and the undertaking of bail, or the money deposited instead of bail, as the case may be, is thereupon declared forfeited. But if at any time within twenty days after such entry in the minutes, the defendant or his bail appear and satisfactorily excuse his neglect, the court may direct the forfeiture of the undertaking or the deposit to be discharged upon such terms as may be just."

Section 19-2928, I.C., is as follows:

"If the forfeiture is not discharged, as provided in the last section, the prosecuting attorney may, at any time after twenty days from the entry upon the minutes, as provided in the last section, proceed by action in the name of the county, against the bail upon their undertaking."

 The acts of the trial court in forfeiting the undertaking and in refusing, upon application, to discharge such forfeiture except upon terms, resulted in a final order or judgment from which an appeal would lie. State v. Johnson, 69 Wash. 612, 126 P. 56; State v. Jakshitz, 76 Wash. 253, 136 P. 132; State v. Olson, 127 Wash. 300, 220 P. 776; State v. Jimas, 166 Wash. 356, 7 P.2d 15, 84 A.L.R. 416; State v. Montague, 138 Kan. 696, 27 P.2d 222; Mahaney v. State, 106 Okl. 152, 233 P. 725; Section 13-201, I.C. Such proceedings have no

bearing upon the judgment of conviction and are not properly before us on an appeal from such judgment. There is no appeal from the order of the trial court in the forfeiture proceedings before us.

Appellant cites the following authorities to support his contention that the court erred in refusing to set aside the forfeiture except upon the terms imposed by the court: State v. Hines, 37 Okl. 198, 131 P. 688; Reed v. State, 76 Okl. 298, 185 P. 326; Baker v. State, 21 Tex.App. 359, 17 S.W. 256; State v. Sandy, 138 Iowa 580, 116 N.W. 599; State v. Schexneider, 45 La. Ann. 1445, 14 So. 250. An examination of these cases shows that they were before the appellate courts on appeals from the orders of trial courts made in proceedings to have the forfeiture of the bond set aside, or on appeals from judgments in suits to collect on the undertakings. In none of such cases was the matter before the appellate court upon an appeal from a judgment of conviction. See also, Annotation 84 A.L.R. 420.

 By Assignment of Error No. XI, appellant complains of the court's Instruction No. 2. Instruction No. 2 sets out the statutory definitions of grand and petit larceny. The court is not required to elaborate thereon. State v. Brooks, 49 Idaho 404, 288 P. 894; State v. Rutten, 73 Idaho 25, 245 P.2d 778.

By Assignment of Error No. XII, appellant challenges Instruction No. 3. Instruction No. 3 is concerned with the question of possession of alleged recently stolen

property. Without setting out the instruction in full, it is sufficient to say that such instruction is more favorable to appellant than is required under our decisions. State v. Vanek, supra; State v. Gilbert, 65 Idaho 210, 142 P.2d 584; State v. Hewitt, supra.

Assignments of Error Nos. XIII and XIV set out that the court erred in refusing to give Defendant's Requested Instructions Nos. 1 and 2, on the ground that appellant was entitled to have the jury instructed on his theory of the case. The two instructions are based on the theory that appellant entered the Tetonia Club with the consent of the person in charge and without an intent to commit larceny therein. The jury were instructed in the court's Instruction No. 1 as to the definition of burglary as defined in Section 18–1401, I.C., wherein it is said that the entry must be made with intent to commit grand or petit larceny or any felony, in order to constitute burglary. The court further instructed the jury in such Instruction No. 1 as follows:

"The essential elements of the crime of burglary of the first degree, under the statutes above quoted, and under the information in this case, may be subdivided as follows:

"1. That the said defendant, Donald Lee Fedder did enter a certain building, to-wit: The Tetonia Club, located at Tetonia in Teton County, Idaho, with the intent then and there to commit the crime of larceny therein.

"2. That said entering, if you find there was an entering, was by said defendant done wilfully, unlawfully, intentionally, knowingly, feloniously and burglariously;"

It thus appears the court instructed the jury that the entry must have been made feloniously and burglariously and with the intent to commit larceny therein. These instructions were sufficient to fairly present to the jury the question of the intent with which the entry into the building was made. State v. Rutten, supra; State v. Hewitt, supra.

The remaining assignments of error cover the refusal of the court to give additional instructions requested by appellant. We will not discuss these requested instructions in detail. They consist largely of amplifications on the statutory definitions, and repetitions on the question of intent. The trial judge having fairly, fully and substantially instructed the jury, it was not error for him to refuse to give the amplifying and repetitious instructions requested by appellant. State v. Rutten, supra; Goetz v. Burgess, 72 Idaho 186, 238 P.2d 444.

No reversible error appearing in the record, we affirm the judgment of conviction.

TAYLOR, C. J., and ANDERSON and SMITH, JJ., concur.

KEETON, Justice (dissenting).

This appeal presents for decision three basic issues: First, was the jury correctly instructed as to the law? Included in this question is whether appellant is entitled to

instructions applicable to his testimony based upon the hypothesis that it is true, when such testimony affects a material issue. Second, can the right of appellant to reclaim money which he was required to pay to be relieved from a forfeiture of his bond be now decided? Third, was the entry into the Tetonia Club at the time charged a lawful entry and without intent to steal?

While some other assignments of error are not without merit, the propositions above outlined are, in my opinion, decisive of the appeal and should result in a reversal of the conviction.

State's witnesses testified in substance that in the early morning (night time) of December 29, 1952, they observed two men enter the Tetonia Club and emerge carrying two slot machines. These machines were placed in a motor vehicle and the two men returned to the club and later reappeared with two more slot machines. Witnesses observed no tools or instrumentalities that could be or were used in breaking into the building. The men carrying the machines appeared to be in no hurry. Other witnesses testified to matters connecting appellant as being one of the persons who entered the Club.

Appellant did not deny the entry or the taking of the machines from the building. He testified that he purchased the machines, paid $250 for them, and the money contained therein, and secured permission from the proprietor or his agent to take possession of the machines at the time and place in question; that his only purpose in entering the building was to obtain what he owned; that he had no intention of committing larceny while in the building. Of the five slot machines identified as allegedly stolen, one, the witness testified, had been delivered to him by the proprietor of the business, or his agent, on December 27th, and arrangements were made between the Club manager and appellant for appellant to come back after closing hours for the other machines purchased and paid for. Also, it was arranged with the manager, or proprietor's agent, that if the place were not open when appellant came for the machines, the door would be unlocked and he might enter. Appellant testified the door was unlocked and he entered and took the machines as per agreement.

Appellant also explained why the manager of the Club did not want the four machines removed during business hours. The explanation given is reasonable.

If appellant's testimony be true, he committed no crime. Whether the testimony be true or false is for the determination of the jury, to be decided by it on proper instructions. Until such time as appellant has been so tried and found guilty, he cannot be legally convicted.

It follows that if appellant entered the Tetonia Club with the permission and consent of the owner, his agent, or one in charge as manager, to take what he allegedly owned and had formerly purchased, he is not guilty of burglary or any other crime.

When appellant entered the building which he was charged with burglarizing,

in order to constitute the crime of burglary, there must have existed in his mind at the time of the entry, a specific intent to commit grand or petit larceny, or some felony. If the intent did not exist at the time of the entry, regardless of what happened thereafter, the crime of burglary was not committed. State v. Dwyer, 33 Idaho 224, 191 P. 203; State v. Sullivan, 34 Idaho 68, 199 P. 647, 17 A.L.R. 902; State v. Bigley, 53 Idaho 636, 26 P.2d 375.

The burglarious intent may be shown by stealing property after the entry is made, but one cannot steal what he already owns.

Conformable to his defense, and with evidence to support the contention, appellant requested the following instruction:

"You are further instructed that the crime of 'burglary' requires a specific intent. By this it is meant that the State has the burden of proving that at the time the defendant entered the Tetonia Club, if you find that he did enter it, that he entered said establishment with the specific intent to commit larceny therein, and if he entered for some other purpose than to commit larceny, it would not constitute burglary. This intent, like other essential elements of the offense charged, must be established beyond a reasonable doubt."

The instruction so requested was a correct statement of law, was not covered by other instructions and should have been given.

Appellant requested the following instruction:

"The jury are instructed that if the defendant in this case was admitted to the Tetonia Club, if you believe from the evidence that he was ever in the Tetonia Club, by the owner or by a tenant in possession or by a partner or lessee of the manager in possession for the owner, and that by reason of the permission and consent of such person he did enter said Tetonia Club, he would not be guilty as charged of the crime of burglary; and if you so find or if you even have a reasonable doubt thereof, you should find the defendant not guilty."

The instruction requested is applicable to the facts in the case, is a correct statement of the law, and is based on testimony properly admitted. The requested instruction is not covered by other instructions and should have been given.

In requested instruction No. 3, after outlining the definition of burglary and larceny, the appellant requested the following instruction:

"You are further instructed that the foregoing sections of the Code, defining larceny, include in such definition the essential element of taking, stealing or carrying away of personal property from the possession of another without any right to said property. You will note that an essential element and ingredient of the crime of larceny is therefore, the proof of ownership, and unless the State proves, beyond a reasonable doubt, the element of ownership and rightful possession of said property alleged to have been

taken by the defendant, then you must acquit the defendant."

The instruction is correct.

Nowhere in the instructions given were the essential elements of the crime of burglary defined. A defendant in a criminal action is entitled to an affirmative instruction applicable to his testimony based upon the hypothesis that it is true when such testimony affects a material issue. State v. Huskinson, 71 Idaho 82, 226 P.2d 779; Dismore v. State, 60 Okl.Cr. 346, 44 P.2d 894, 895; State v. White, 46 Idaho 124, syl. 10, 266 P. 415; State v. Moultrie, 43 Idaho 766, 254 P. 520.

From the very nature of the definition of burglary there must be a specific intent at the time of the entry to steal or commit a felony.

A person who enters a building by permission and takes possession of what he claims to own is not guilty of burglary. It seems to me this proposition is so fundamental that an extensive review of authorities is not required. See 12 C.J.S., Burglary, § 2, page 666; 9 Am.Jur. 254, Sec. 26; State v. Gailey, 69 Idaho 146, syl. 9, 204 P.2d 254.

Under the provisions of Art. 1, § 7, Idaho Constitution, the right of trial by jury is made inviolate. Such a trial means on an issue of fact, free from prejudice, with proper instructions as to the law covering the situation.

I am also of the opinion that the question of the forfeiture of appellant's bond and reinstatement of the same under the terms imposed which required appellant to pay $480, is reviewable in this proceeding. Section 13–219, I.C., provides as follows:

"Upon an appeal from a judgment the court may review the verdict or decision and any intermediate order or decision, if excepted to, which involves the merits or necessarily affects the judgment, except a decision or order from which an appeal might have been taken: provided, that whenever there is substantial evidence to support a verdict the same shall not be set aside."

The forfeiture of appellant's bail and reinstatement of it on terms is an intermediate order and should be reviewed on appeal from the judgment. I find nothing in the codes which specifically makes the order forfeiting the bond appealable. It is reviewable on appeal from the final judgment.

I consider the action of the trial court in imposing terms for the reinstatement of the bond an abuse of discretion. The money which appellant was required to pay should be returned to him. No defendant in a criminal action should be required to pay the State to prosecute him.

The judgment should be reversed and a new trial granted, and the $480 penalty imposed should be returned to appellant.